FILED
JUL 19 2005
CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | | |
|---|---|---|
| CINDY L. HANSEN, | ) | CIV. 04-5033 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION |
| ACTUARIAL AND EMPLOYEE | ) | AND ORDER |
| BENEFIT SERVICES COMPANY, SOUTH | ) | |
| DAKOTA GOLD COMPANY, INC. | ) | |
| HEALTH CARE PLAN, and AES & | ) | |
| ADOPTING AFFILIATES HEALTH | ) | |
| CARE PLAN, | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff Cindy L. Hansen (Hansen) seeks summary judgment in this health benefit claim litigation against Actuarial and Employee Benefit Services Company (Actuarial), South Dakota Gold Company, Inc., Health Care Plan (the Plan), and AES & Adopting Affiliates Health Care Plan.[1] This Court has jurisdiction pursuant to 29 U.S.C. § 1132(a) and 28 U.S.C. § 1331. After considering the entire record and the briefs submitted by the parties, the Court finds that Hansen is entitled to summary judgment.

## FACTUAL BACKGROUND

Hansen is employed by South Dakota Gold Company, Inc. (Gold). As an employee, Hansen is a beneficiary under the Plan. See Defendant's Statement of Disputed Facts at ¶ 1. Actuarial serves as the claims supervisor of the Plan, while AES & Adopting Affiliates (AES

---

[1] Hereinafter, when collectively discussing the named defendants in this litigation, the Court will refer to the parties as "the Defendants."

or "the administrator") acts as the administrator. Record[2] at 134. Gold is part of AES.[3] Id. at 42.

Hansen suffered from uncontrolled gastroesophageal reflux disease (GERD) for over ten years prior to 2002. Record at 1, 8. On December 6, 2002, Hansen was examined by Lee D. Trotter, D.O. (Dr. Trotter) after a referral by Patricia Stephenson M.D. Id. at 1. Hansen described two concerns, her uncontrolled GERD and her clinically severe obesity. Id. Dr. Trotter noted that Hansen had previously tried antacid treatments as well as the prescription drug Nexium to control her disease. Id. Arlene M. Heberden, C.N.P. (Heberden), one of Hansen's other medical providers, indicated that Hansen was also treated "with daily morning PPI therapy and bedtime H2 blocker tharapy." Id. at 8. Dr. Trotter believed Hansen's symptoms had progressively worsened despite aggressive medical treatment. Id. at 4. While Hansen was receiving "maximal medical therapy," she had only obtained partial symptom relief. Id. Dr. Trotter recommended surgery to alleviate Hansen's GERD. Id. at 1, 4. This recommendation was joined by Heberden. Id. at 8.

Dr. Trotter discussed two separate surgical procedures which would provide symptom management for Hansen's disease. Id. at 2, 4. The first procedure, fundoplication,[4] would

---

[2] Hansen filed numbered documents which constitute the record in this matter. For the purpose of citation, the Court will hereinafter refer to these documents as the "Record." Although the defendant takes issue with the form in which Hansen has filed her Statement of Undisputed Facts, they offer no additional documents to supplement the information submitted by Hansen. In this type of case, where the Court reviews the entire record, the failure to strictly abide by the requirements of Local Rule of Practice 56.1(B) is of little consequence.

[3] The exact nature of the relationship between Gold and AES is not entirely clear.

[4] Fundoplication is the mobilization of the lower end of the esophagus and the folding of the stomach around it to treat GERD. See Dorland's Illustrated Medical Dictionary, 667 (28th

treat Hansen's GERD but not her obesity. Id. The second procedure, Roux-en-y gastric bypass,[5] would provide management for GERD and obesity. Id. Due to Hansen's weight, fundoplication could not be performed laparoscopically.[6] Accordingly, Dr. Trotter believed there would be little difference in the cost of performing either procedure, and recommended the gastric bypass option. Id. at 2, 4.

On December 11, 2002, Dr. Trotter sent a letter to Actuarial explaining Hansen's medical problems. Id. at 4. Several weeks later, Heberden sent a similar letter to Actuarial. Id. at 8. On January 9, 2003, HealthSpan Health Services (HealthSpan), a medical consultant for Actuarial, determined the gastric bypass procedure was medically necessary. Id. at 10. A handwritten note on a "HealthSpan Inpatient Log," however, indicates that one of its representatives was notified (apparently by the administrator) on January 14, 2003, that the requested procedure was excluded under the Plan. Id. at 11. A second inpatient log notes that a call was placed to the medical provider with an explanation for the denial. Id. at 12. The log does not identify the medical provider.

On January 31, 2003, Hansen paid the Rapid City Medical Center, LLP, $6,153.80. Id. at 18. Hansen underwent gastric bypass surgery on February 5, 2003. Id. at 29-33; Amended

---

Ed. 1994).

[5] Roux-en-Y procedure involves the creation of a Y-shaped connection using the small intestine, which is divided before one end is implanted into an organ such as the stomach and the other end is connected back to the small intestine. See Dorland's Illustrated Medical Dictionary, 70 (28th Ed. 1994). During a gastric bypass procedure, the stomach is divided and the remnants are joined with a connection. Id. at 243

[6] A laparoscopic procedure is a less invasive surgical technique.

Complaint ¶ 1. She incurred medical bills in excess of $30,000, which were submitted to Actuarial. Record at 48-67. Actuarial denied the claims, and provided Hansen with "Explanation of Benefit" forms which stated that charges for the treatment of obesity were not covered under the Plan. Id. at 70-72, 76-78, 80-87. There is no evidence that Hansen received written denial of her claims for reimbursement or was timely advised of her appeal rights.[7]

Hansen obtained an attorney who initially requested Hansen's file on October 6, 2003, and again on November 14, 2003. Id. at 19-21. On January 2, 2004, after receiving the file, Hansen's attorney attempted to appeal from the refusal to pay the medical bills. Id. at 23. Actuarial sent the attorney a letter dated February 12, 2004, which identified the exclusion for treatment of obesity, noted that gastric bypass was not a covered procedure, and provided information related to the right to appeal the decision. Id. at 43. Hansen appealed on July 13, 2004. Id. at 45.[8] The appeal was denied by AES on July 27, 2004. Id. at 47. The denial states, in relevant part:

> Ms. Hanson's [sic] initial appeal to our Claims Supervisor, AEBS, was reviewed by the Plan's Medical Review physician and it was determined that gastric by-pass is for the treatment of obesity. While the use of gastric by-pass as a treatment for GERD is acknowledged, our plan records indicate that no less invasive treatments were tried prior to this surgery. For a GERD diagnosis, there are a variety of treatments ranging from over-the-counter medications to

---

[7] The denial letter from the administrator which was eventually received by Hansen's attorney does indicate that Hansen was notified of the denial on January 22, 2002. Record at 47. Hansen states she never received a written explanation of the decision. Brief in Support of Motion for Summary Judgment at 3. She has not, however, alleged that she was unaware of the denial prior to undergoing the surgical procedure.

[8] A delay in the receipt of the written denial explanation from Actuarial was the cause of the lengthy period between the date of the explanation and the appeal. See Stipulation and Joint Request for Stay, docket #11, June 29, 2004.

4

laser surgery that have been proven remedies for this disease that could have been explored.

Gastric by-pass is not a covered expense as defined by the Plan document. It is irrelevant that there are secondary benefits arising from this procedure. In a notice sent to Ms. Hanson [sic] dated January 22, 2002, she was advised that obesity treatment is not a covered expense under this Plan, even as a treatment for another sickness. This notification clearly stated that the procedure would not be covered and no benefit would be paid. Please refer to the Section of the Plan Document entitled Plan Exclusions, subparagraph 23, that states in its entirety:

> "Care and treatment of obesity, weight loss, or dietary control, whether or not it is, in any case, a part of the treatment plan for another sickness."

I find that a denial of this claim is appropriate and the intent of the Plan's provisions has been correctly interpreted.

Id. Hansen now seeks judicial consideration of the appropriateness of the benefit denial and requests recovery of benefits due under the Plan. Amended Complaint at 3.

## THE PLAN

The Plan is to be administered in accordance with the provisions of the Employee Retirement Income Security Act of 1974 (ERISA), Record at 129. The administrator is afforded "discretionary authority to construe and interpret the terms and provisions of the Plan[.]" Id. Enumerated within the Plan are specific exclusionary provisions. Id. at 112-114. The provision implicated in this litigation is an exclusion for: "Care and treatment of obesity, weight loss, or dietary control whether or not it is, in any case, a part of the treatment plan for another sickness." Id. at 16, 114. There is no provision within the Plan specifically addressing the gastric bypass surgical procedure.

5

## SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, a movant is entitled to summary judgment if the movant can "show that there is no genuine issue as to any material fact and that (the movant) is entitled to judgment as a matter of law." In determining whether summary judgment should issue, the facts and inferences from those facts are viewed in the light most favorable to the nonmoving party, and the burden is placed on the moving party to establish both the absence of a genuine issue of material fact and that such party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Once the moving party has met this burden, the nonmoving party may not rest on the allegations in the pleadings, but by affidavit or other evidence must set forth specific facts showing that a genuine issue of material fact exists. In determining whether a genuine issue of material fact exists, the Court views the evidence presented based upon which party has the burden of proof under the underlying substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2005, 91 L.Ed.2d 202 (1986).

The Supreme Court has instructed that "summary judgment is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy, and inexpensive determination of every action'" Celotex Corp. v. Catrett, 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts," and "[w]here the record as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Matsushita, 475 U.S. at 486.

## DISCUSSION

1.  **Standard of Review**

A court normally reviews the decision for an abuse of discretion if a disability plan provides discretionary authority to an administrator in determining a claimant's eligibility for benefits. Farfalla v. Mutual of Omaha Ins. Co., 324 F.3d 971, 973 (8th Cir. 2003) (citing Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989)). There is no dispute that the Plan provided the administrator with discretionary decision-making authority. However, Hansen argues that the Court should apply a less deferential standard of review.

A less deferential review "is required when the claimant presents 'material, probative evidence demonstrating that' there exists 'a palpable conflict of interest' or 'a serious procedural irregularity' that caused a 'serious breach' of the administrator's fiduciary duty to the claimant." Farfalla, 324 F.3d at 973 (quoting Woo v. Deluxe Corp., 144 F.3d 1157, 1160 (8th Cir. 1998)). The serious breach requirement of the test presents a considerable hurdle for a plaintiff to overcome. Barnhart v. UNUM Life Ins. Co., of Am., 179 F.3d 583, 588 n. 9 (8th Cir. 1999). The mere existence of irregularities is not sufficient to satisfy the second part of the test. Buttram v. Central States, Southeast and Southwest Areas Health and Welfare Fund, 76 F.3d 896, 901 (8th Cir. 1996). The irregularities must have a connection to the substantive decision reached by the administrator. Id. The evidence "must give rise to serious doubts as to whether the result reached was the product of an arbitrary decision or the plan administrator's whim." Tillery v. Hoffman Enclosures, Inc., 280 F.3d 1192, 1197 (8th Cir. 2002). If both

prongs of the test are satisfied, the Court must apply a "sliding scale" approach to determine the deference given to the administrator's decision. Id.

Hansen argues that a palpable conflict of interest is present because the same party funds and administers the Plan and thus gains financially from denying benefits to policyholders. A palpable conflict of interest can exist under such circumstances. Torres v. UNUM Life Insurance Co. of America, 405 F.3d 670, 678 (8th Cir. 2005). The Defendants do not dispute Hansen's initial argument concerning the funding and administering of the Plan. Instead, they argue that Hansen has not satisfied the second prong. The Court agrees. Hansen has produced no evidence connecting the conflict of interest to the substantive decision reached and, therefore, has not satisfied the second prong of the test. See id. at 679.

Hansen also believes three procedural irregularities in handling of her claim entitle her to less deferential standard of review. The alleged procedural irregularities include: (1) a violation of ERISA and the terms of the Plan by failing to provide written notification of the denial of her claim for benefits, the reasons for the denial, and her right to appeal; (2) the failure to adequately review her medical record; and (3) a misrepresentation of the terms of the Plan by indicating that gastric bypass is not a covered expense. With respect to the first procedural irregularity, Hansen has failed to establish a link between the failure to provide proper notification and the denial of benefits. The remaining arguments raised by Hansen identify conduct which this Court finds very troubling. However, the Court is not convinced that the facts qualify this matter as one of the few rare cases in which the second requirement of the test is satisfied. See id. (noting only two cases which satisfied the second prong of Woo). Although a certain amount of arbitrariness is present in the administrator's decision,

8

the second prong of the test requires a showing of dishonesty, improper motive, or a complete lack of judgment. See Neumann v. AT&T Communications, Inc., 376 F.3d 773, 781 (8th Cir. 2004). The administrator's conduct does not rise to a level necessary for Hansen to clear the considerable obstacle presented by the second prong of the test. As a result, she is not entitled to less deferential review and the Court will apply the abuse of discretion standard.

Under the abuse of discretion standard, the decision is reviewed for reasonableness, "which requires that it be supported by substantial evidence that is assessed by its quantity and quality." Torres, 405 F.3d at 680. Substantial evidence is "more than a scintilla but less than a preponderance." Schatz v. Mutual of Omaha Ins. Co., 220 F.3d, 944, 949 (8th Cir. 2000). The administrators denial of benefits "need not be the only sensible interpretation, so long as its decision offer[s] a reasoned explanation, based on the evidence, for a particular outcome." Tillery, 280 F.3d at 1199 (quotation omitted).

## 2. Reasonableness of the Decision

The Defendants believe the issue is whether gastric bypass was covered under the Plan for the treatment of obesity. They contend that gastric bypass is for the treatment of obesity and, therefore, fell within the realm of the policy exclusion even though it may have also had the secondary effect of treating Hansen's GERD. The Defendants continually stress that the denial decision was based on the terms of the Plan and not medical necessity. They fail to see how their interpretation of the terms of the Plan could be considered anything but reasonable. The arguments raised by the Defendants are certainly resourceful, but the facts of this case convince the Court that Hansen is not precluded from receiving coverage by the terms of the Plan.

9

Hansen appears to challenge both the administrator's interpretation of the terms of the Plan and its evaluation of the facts in determining the application of the Plan. In cases involving disputes over the proper interpretation of the terms of a plan, this circuit generally applies a five-factor test. Finley v. Special Agents Mut. Ben. Ass'n, 957 F.2d 617, 621 (8th Cir. 1992); Tillery, 280 F.3d at 1199; Cash v. Wal-Mart Group Health Plan, 107 F.3d 637, 641 (8th Cir. 1997). The parties believe the test should be applied. Under the test, the Court must consider:

> (1) whether the administrator's interpretation is consistent with the goals of the Plan; (2) whether the interpretation renders any language in the Plan meaningless or internally inconsistent; (3) whether the administrator's interpretation conflicts with the substantive or procedural requirements of the ERISA statute; (4) whether the administrator has interpreted the relevant terms consistently; and (5) whether the interpretation is contrary to the clear language of the Plan.

Tillery, 280 F.3d at 1199.

With regard to the first factor, the overall goal of the Plan is to "protect Active Employees and their Families against catastrophic expenses." Record at 90. The disputed provision of the Plan at issue in this case is an exclusion. Exclusions are not inconsistent with the goal of an insurance policy because the purpose of exclusion provisions are to maximize benefits to all participants by limiting or refusing payment for certain procedures. See id, at 1199. Hansen argues that the denial of benefits conflicted with the purpose of the exclusion because the alternative surgical procedure of fundoplication, which would only have treated her GERD, would have cost the Plan in the long run since the extensive medical treatment required by obese individuals is expensive. Thus, she contends that the application of the exclusion, in this instance, would not benefit all plan participants. Hansen's argument is

10

without sufficient factual basis. While it can be argued that the Plan would *likely* save money if she lost weight, she has no evidence to justify a finding that the Plan definitely would save money. Moreover, the application of an exclusion is not based upon whether it would save money in a particular case. The Court is not persuaded that the administrator's interpretation is inconsistent with the purpose of the exclusion.

The second factor, which requires the Court to determine whether the administrator's interpretation renders language in the Plan meaningless or internally inconsistent, arguably falls in favor of the Defendants. Hansen claims that the Plan's decision not to pay for her gastric bypass surgery, at no additional cost beyond that necessary for fundoplication, is inconsistent with the Plan's purpose of protecting families against catastrophic health expenses. Although Hansen's argument is not necessarily incorrect, any benefit denial of a substantial amount could be considered inconsistent with the Plan's overall purpose. The Court is not convinced the inconsistency raised by Hansen is sufficient to warrant a finding that this factor favors a determination of unreasonableness.

Hansen also argues that the administrator's failure to reasonably evaluate evidence rendered the language of the Plan meaningless. In support of her argument, she cites Torres, in which the defendant failed to consider the side effects of the plaintiff's prescribed medications. Torres, 405 F.3d at 680. Torres is factually distinguishable from this case. The terms of the disability plan at issue in Torres specifically required the defendant to consider whether individuals could perform their occupation "as it is normally performed in the national economy." Torres, 405 F.3d at 681. Hansen has identified no similar language in the Plan which would require the administrator to evaluate evidence in a certain specified manner in

11

evaluating a benefit claim. Although the Court is convinced that the administrator completely and unreasonably failed to properly evaluate the evidence, Hansen has not established that the failure rendered any language in the Plan meaningless or inconsistent.

The third factor requires the Court to consider whether the administrator's interpretation conflicts with the substantive or procedural requirements of ERISA. Hansen again cites Torres in support of her argument that the factor favors a finding of unreasonableness. Torres recognized that ERISA requires plan administrators "to discharge their duties in accordance with the plan documents." Id. (citing 29 U.S.C. § 1104(a)(1)(D)). The Eighth Circuit Court of Appeals found that the defendant's failure to consider evidence directly related to the definition of disability warranted a determination that the third factor supported the plaintiff. Id. This case does not present the same type of situation because Hansen cannot point to a specific provision of the Plan which the administrator failed to consider. Additionally, while certain procedural irregularities in the case do constitute violations of ERISA, "the denial of procedural rights does not of itself create a substantive right to benefits." Tillery, 280 F.3d at 1200.

Hansen and the Defendants agree that the fourth factor does not favor either party. There is no evidence by which the Court could determine whether the administrator has interpreted the relevant terms consistently. Thus, the fourth factor does not weigh in favor of either party.

The fifth factor requires the Court to determine whether the Defendants' interpretation is contrary to clear language in the Plan. Hansen argues that the Defendants' interpretation is a startling and irrational construction of the obesity exclusion. The provision allows the

administrator to exclude care and treatment for obesity. Since gastric bypass is generally recognized as a method of treatment for obesity, the interpretation is not clearly contrary to the language of the exclusion. Although not clearly contrary, the administrator's interpretation is not reasonable. The medical evidence suggests that two procedures were available to treat GERD. Both procedures would equally control a serious medical condition that required surgical intervention. To construe the exclusion as allowing the denial of payment for a procedure which the medical evidence suggests would control Hansen's GERD, because the same procedure is commonly associated with the treatment of obesity, seems unreasonable to this Court. However, the factor arguably favors a finding of reasonableness.

The application of the five-factor test admittedly favors a finding that the administrator's interpretation of the exclusion was reasonable. However, after considering all the facts and circumstances surrounding this case, the Court is not convinced that the result of the application of the five-factor test mandates a conclusion that the administrator's conduct was reasonable. The administrator's decision was guided not only by its interpretation of the exclusion, but also by its evaluation of the facts to determine the application of the Plan. This circuit has indicated that the factor test may not be instructive if the Court must review the administrator's evaluation of the facts in determining the application of a plan. See Farley v. Arkansas Blue Cross and Blue Shield, 147 F.3d 774, 777 n. 6 (8th Cir. 1998). After considering the administrator's evaluation of the facts, the Court is convinced that an abuse of discretion occurred.

The Defendants argue the decision was based solely upon the application of the exclusion. It does appear that the administrator, in responding to the medical providers'

request for coverage, may initially have associated gastric bypass solely with the treatment of obesity and considered the procedure excluded under the Plan. This determination itself was not correct because the Plan does not specifically exclude the procedure. Additionally, as the medical evidence suggested, and the administrator acknowledged, the procedure is an available treatment for GERD. By its acknowledgment, and its attempt to use Hansen's medical history to support its decision, the administrator was not just interpreting the provision, but was evaluating the facts in an effort to apply the terms of the Plan. The administrator's attempt to use incorrect medical facts to support the decision is particularly appalling.

In stating that Hansen failed to seek less invasive treatment, the final denial letter blatantly misrepresents the medical record. The administrator clearly did not properly review the medical record. Had the administrator properly evaluated Hansen's medical history, it would have recognized that she sought numerous available treatment options to control her GERD before surgery was recommended. Had the administrator properly applied the facts, it would have realized that under the facts and circumstances of this case, gastric bypass was a rational option for the treatment of GERD. In making its decision, the administrator completely failed to evaluate the facts to determine whether the treatment was excluded under the Plan. The failure constitutes an abuse of discretion. The administrator's decision is not supported by substantial evidence and cannot be upheld.[9]

---

[9] The Court requested the parties consider whether any issues raised in Cain v. Fortis, 694 N.W.2d 709 (S.D. 2005) required consideration in this case. However, because of the Court's resolution of this case after applying the abuse of discretion standard, the issues briefed by the parties need not be addressed.

## CONCLUSION

Although the issue is not necessarily relevant to the Court's decision, had the Defendants covered the procedure, they would have incurred no costs beyond those necessary to satisfy their financial obligation for the covered procedure of fundoplication.[10] The Court is disturbed by the Defendants unwillingness to equitably end this dispute. Regardless, the Court is not convinced that coverage for Hansen's gastric bypass surgery should have been excluded under the terms of the Plan. The decision of the administrator cannot be upheld. Accordingly, it is hereby

ORDERED that Hansen's motion for summary judgment [doc. #26] is granted.

Dated this 19th day of July, 2005.

BY THE COURT:

ANDREW W. BOGUE
SENIOR DISTRICT JUDGE

---

[10] The Defendants have never claimed that the fundoplication procedure would not have been covered under the Plan. The Plan excluded coverage for "Medically Unnecessary" treatment. Record at 108. "Medically Necessary" is defined as treatment "recommended or approved by a Physician; and is consistent with the patient's condition or accepted standards of good medical practice; and is medically proven to be effective treatment of the condition; and is not performed mainly for the convenience of the patient or provider; and is not conducted for research purposes; and is the most appropriate level of services which can be safely provided to the patient" Id. The medical record indicates that Hansen required surgical treatment to control her GERD. There really is no question that treatment directed solely at controlling GERD would be covered under the Plan.